JOURNAL ENTRY AND OPINION
{¶ 1} Liberty Title Insurance Agency, Inc. ("Liberty"), appeals from an order of Acting Shaker Heights Municipal Court Judge Daniel L. Lovinger, who found it guilty of a first degree misdemeanor for facilitating a real estate title transfer without first ensuring that point-of-sale violations had been repaired, or for failing to place funds in escrow to ensure their repair. It claims the conviction should be overturned because the City of Shaker Heights ("Shaker") failed to provide sufficient evidence that it was involved in the transaction, and also failed to prove a required mens rea element of the crime. Because Shaker lacked the territorial jurisdiction to charge Liberty with such an offense, we vacate the conviction and order that the complaint be dismissed.
 {¶ 2} On August 6, 2002, Shaker's Housing Department made a point-of-sale inspection of a two-family home at 3372 Colwyn Road. It is unclear whether the property was owned by Clara Clemens or Annie Perkins Lane, who acted on her behalf through a purported power of attorney. Ms. Lane was informed that a number of violations needed to be corrected and that the property could not be sold until all repairs were made or funds were put in an escrow account to ensure their repair.[1]
 {¶ 3} Although there are no documents evidencing any transfer of title, it appears that, on August 21, 2002, the property was transferred/sold to Yelena Mayzel, who then transferred title to L.A. Property Management two days later. At some point Shaker learned the property had been sold, but the violations had not been corrected and no escrow account had been established. In February 2003, Shaker filed a complaint against Liberty, alleging a violation of Shaker Heights Cod.Ord. 1415.08, which states:
No person, firm or corporation acting in the capacity of anescrow agent in any real estate transaction, shall transfertitle, file any instrument to transfer title, or disburse fundsfrom any sale unless the provisions of this chapter have beensatisfied, including but not limited to the specific provisionsof Section 1415.05.
 {¶ 4} Shaker claimed that Liberty had acted as escrow agent in the transactions between Clemens/Lane, Mayzel and L.A. Property Management, and that it failed to ensure that housing violations had been corrected or that funds were placed in escrow. Judge K.J. Montgomery appointed Daniel L. Lovinger to serve as Acting Judge,[2] and a bench trial was held on May 27, 2003.[3]
 {¶ 5} Keith Williams, Shaker's Assistant Director of Housing, testified that he learned of Liberty's involvement from real estate agents involved in the sale but, as noted, no records of either transaction were introduced and, when called upon to testify, real estate agent Vladimir Khutoryan asserted his privilege against self-incrimination. Ms. Mayzel testified that Khutoryan acted as the real estate agent, and that he had given her notice of the violations prior to the sale. She also testified that Liberty acted as the escrow agent, and that she made payments to Liberty when she bought the property.
 {¶ 6} At the close of Shaker's case, Liberty moved for directed verdict and argued that the judge lacked territorial jurisdiction because any actions it took occurred in its Cleveland offices and, therefore, it did not commit an offense within Shaker Heights. It also argued that the ordinance required a mens rea of recklessness, and that Shaker had failed to show that it was reckless in transferring title or disbursing funds without first ensuring that the housing violations had been corrected or that repair funds had been placed in escrow.
 {¶ 7} On August 18, 2003, the judge found Liberty guilty and imposed a fine of $1,000. It moved for a stay of judgment pending appeal[4] and asserts two assignments of error, which are included in an appendix to this opinion.
 {¶ 8} Before addressing these issues, however, we must face a jurisdictional question. In Cleveland Hts. v. Midland TitleSec., Inc.,[5] we held that a municipality could not enforce a similar ordinance against a non-resident escrow agent, at least when the transfer of title and disbursement of funds took place outside that municipality. Although not an assignment of error, the issue of territorial criminal jurisdiction under R.C. 1901.20 is part of the municipal court's subject matter jurisdiction, and cannot be waived.[6] Therefore, unless we determine that Cleveland Hts. v. Midland Title Sec., Inc.,
supra, is inapplicable or should not be followed, the complaint must be dismissed for lack of jurisdiction.
 {¶ 9} When Liberty challenged the judge's territorial jurisdiction in its motion for directed verdict, Shaker countered that the property's location provided a sufficient nexus to find that Liberty's acts occurred in the city. We agree that, for some parties, the act or failure to act with respect to housing violations must be presumed to have occurred within the city, lest enforcement become impossible. However, such acts do not extend to non-resident escrow agents.
 {¶ 10} Shaker Heights Cod.Ord. 1415.05 requires the seller to obtain the certificate of inspection, the certificate of compliance, and to make any required escrow deposit. These acts can be held to occur within the city of Shaker Heights and, because ownership of property can also be considered an "act" that occurs within the city limits, a seller can also be held responsible for the failure to act with respect to the property.
 {¶ 11} An escrow agent, however, is not charged with any duty to obtain an inspection, correct violations, or place funds in escrow, and its connection to the property is limited to its participation in the transaction of sale. However, Shaker Heights Cod.Ord. 1415.08 purports to criminalize an agent's act of title transfer or disbursement of funds if violations have not been corrected or funds have not been placed in escrow. If the agent is a non-resident, the purported criminal acts of fund disbursement or title transfer may occur outside the municipality and, if so, the municipality does not have territorial jurisdiction to prosecute.
 {¶ 12} We reiterate that our decision here does not prevent a municipality from enforcing housing inspection ordinances against a seller or the seller's agent, because the duties to obtain an inspection, correct violations, and notify purchasers can be held to occur in the city. However, even though a housing code enforcement scheme might be more efficient when provisions like Shaker Heights Cod.Ord. 1415.08 are broadly interpreted, a municipality does not have jurisdiction to hold an escrow agent criminally liable for the seller's failures if the agent's acts do not occur in the city. Shaker failed to prove that Liberty disbursed funds or transferred title within Shaker Heights and, therefore, it failed to show jurisdiction over the alleged crime.
 {¶ 13} Because Shaker lacked territorial jurisdiction, Liberty's assignments of error are moot.[7] The judge shall dismiss the complaint.
Judgment vacated and case remanded.
McMonagle, J., concurs.
 MICHAEL J. CORRIGAN, A.J., CONCURS IN JUDGMENT ONLY IN PARTAND DISSENTS IN PART (See separate Concurring and DissentingOpinion).
[1] Shaker Heights Cod.Ord. 1415.05(d) requires an escrow account containing 150% of the cost of estimated repairs if a property is to be sold without a certificate of compliance showing that the violations have been corrected.
[2] R.C. 1901.10.
[3] Although the order appointing Lovinger literally states that he is to serve only on May 27, 2003, his status as Acting Judge has not been challenged, and it reasonably appears that the order was intended to appoint him as Acting Judge for both the hearing and decision of the case. In the absence of any challenge, the appointment gave him adequate color of authority to decide the case. Huffman v. Shaffer (1984),13 Ohio App.3d 291, 292, 13 OBR 356, 469 N.E.2d 566.
[4] Although there is no record showing a ruling on the motion, we find that Liberty has adequately shown a continuing controversy because it moved for a stay and there is no evidence showing that it paid the fine. Cf. Cleveland v. Martin,
Cuyahoga App. No. 79896, 2002-Ohio-1652 (voluntary satisfaction of misdemeanor sentence can render appeal moot).
[5] (Feb. 14, 1980), Cuyahoga App. No. 40500.
[6] Rose v. Mays (Nov. 1, 1995), Montgomery App. No. CA 15084, citing Thomas v. Holiday Inn of Lima (1992),62 Ohio Misc.2d 487, 489-491, 601 N.E.2d 688.
[7] App.R. 12(A)(1)(c).